**LOCCKE, CORREIA, SCHLAGER,**
**LIMSKY & BUKOSKY**
24 Salem Street
Hackensack, New Jersey 07601
(201) 488-0880
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **STATE TROOPERS FRATERNAL ASSOCIATION OF NEW JERSEY,** on behalf of its individual members, and all other persons similarly situated, | : : : : : : | |
| and | : : | |
| **STATE TROOPERS NON-COMMISSIONED OFFICERS ASSOCIATION OF NEW JERSEY,** on behalf of its members, and all other persons similarly situated but un-named | : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | |
| **STATE OF NEW JERSEY,** Office of the Attorney General, Jeffrey Chiesa, Attorney General of the State of New Jersey; Division of Law and Public Safety; Division of State Police; Superintendent of State Police, Joseph R. Fuentes | : : : : : : : : | **CERTIFICATION OF STFA PRESIDENT CHRISTOPHER BURGOS** |
| Defendants, | : : | |

1

I, Christopher Burgos, do hereby certify as follows:

1. I am the President of the State Troopers Fraternal Association of N.J., Inc., (hereinafter "STFA") and have personal knowledge of the facts herein and make this certification in support of plaintiffs' application to enjoin the removal of several State Troopers and one Trooper Sergeant without a pre-deprivation hearings.

2. The State Troopers Fraternal Association (hereinafter STFA) is the collective bargaining representative for State Troopers under the rank of sergeant employed by the State of New Jersey.

3. The STFA was and remains a public employee organization and is the duly recognized majority representative of all New Jersey State Troopers hold the titles Trooper, Trooper II, Trooper I, Detective, Detective II, and Detective I employed by the State of New Jersey, Division of State Police.

4. The State Troopers Non Commissioned Officer's Association (hereinafter STNCOA) is the collective bargaining representative for State Troopers holding the rank of

   Sergeant, Sergeant First Class, Detective Sergeant and Detective Sergeant First Class.

5. Both the STFA and the STNCOA have agreed with the State to a promotional process. This promotional process is memorialized within the respective Collective Bargaining Agreements.

6. Each Trooper is placed on an eligibility list for promotion and is given a numerical ranking on the promotional list.

7. The STFA contract promotional clause relating to promotions provides in relevant part:

### ARTICLE VIII

### PROMOTIONS

**Promotions to Sergeant and Detective Sergeant**

A.  Promotions to the rank of Sergeant and Detective Sergeant shall be made based upon the application of criteria to be established by the Division as to each vacancy to be filled by promotion.

B.  When such vacancies occur, the Division shall announce all criteria to be met by the candidates and the weight to be assigned to each of the criteria announced *which will constitute the exclusive basis for promotion* in accordance with provisions set forth in this Article.

* * *

   2.   The Division shall apply the criteria to

       each candidate and shall prepare a list of candidates for each position vacancy in order of highest to lowest total scores, including the individual scores relating to each of the criterion.

3. (a) *The candidate(s) with the highest numerical score(s) shall be first promoted*, subject to the Superintendent's judgment that the candidate with the highest score on the list is qualified for promotion.  If the Superintendent determines that the candidate with the highest score on the list is not qualified for promotion, that list will no longer be utilized.

      \* \* \*

8. A true copy of the last executed contract between the STFA and the Division of State Police, reference above, is attached hereto as (Exhibit A)

9. The STFA/NCO contract, governing Sergeants, Sergeants First Class, Detective Sergeants and Detective Sergeants First Class  provides similar contract terms:

### ARTICLE XV

### PROMOTIONS

A. Promotions to the rank of Sergeant First Class, Detective Sergeant First Class, and Lieutenant shall be made based upon the application of relevant and reasonable criteria and sub-criteria to be established by the Division as to each vacancy to be filled by promotion.

B. When such vacancies for promotion occur, the Division shall announce the criteria and sub-

> criteria to be met by the candidates and the particular weight to be assigned to each criteria and sub-criteria announced *which will constitute the only and exclusive basis for promotion* in accordance with the provisions of this article.
>
> * * *
>
> 2. The Division shall apply the criteria to each candidate and shall prepare a list of candidates for each position vacancy in order of highest to lowest total score, including the individual scores relating to each of the criteria.
>
> 3. (a) *The candidate with the highest numerical score shall be first promoted*, and in the event of multiple vacancies, promotions shall be made in the order of the highest numerical scores. If the Superintendent determines that the candidate with the highest score on the list is not qualified for promotion, that list will no longer be utilized.

10. A true copy of the last executed contract between the STNCOA and the Division of State Police referenced above is attached hereto as Exhibit B)

11. Both contracts share a similar assurance that the "highest ranked eligible shall be first promoted" and that the "exclusive basis" for any promotion will be the ranking system.

12. The Ranking system typically occurs on an annual basis. Interwoven with the contractual promotional process the Division of State Police has also established an accompanying policy for placement and rank of any temporary promotion which is also tied to the highest ranked eligible.

13. The ranking system for permanent appointment and temporary or provisional appointment is off the same ranking list. If the Superintendent determines there is a supervisory need for a provisional or temporary appointment the topped ranked candidate has the right, in accordance with long standing policy, to that position.  The STFA and STFA/NCO is unaware of any occurrence when the highest ranked candidate either did not serve in any available acting post or was not eventually promoted at the next available promotional opportunity.

14. The Mutually explicit understanding is that those at the top of the promotional eligibility test are eligible for and have the right to any available acting position.

15. There is an explicit, mutually recognized policy that the Trooper entitled to any temporary or acting position will be the candidate who then maintains the highest score on the formal promotional eligibility list. This is a long standing practice and mutual understanding.

16. Since remaining on the promotional eligibility list and in the acting position are interchangeable, thereby, ipso facto, if you are removed from the acting assignment you are

no longer eligible for promotion and vice versa. Removal of eligibility for either temporary or permanent promotional lists essentially bans them from any further chance at promotion for one or the other.

17. Troopers in acting positions are granted what is called a provisional rank, and what is understood throughout the Division of State Police as "pay and display" – meaning that those assigned temporarily or provisionally are granted the pay of the higher title and given the rank insignia that they wear on their uniforms.

18. In conformance with those long standing policies, the State appointed to acting Lieutenant, Sergeant First Class, Dewey Bookholdt. Sergeant First Class Bookholdt was appointed to the rank of Acting Lieutenant on June 18, 2011.

19. The Superintendent of State Police also assigned acting positions to Trooper John Cardini, Trooper Lance Moorehouse, Trooper Neal Picillo and Trooper Erik Ruczynski, all of whom were appointed to positions of Acting Sergeant.

20. Trooper Cardini was appointed as an acting sergeant on July 17, 2010.

21. Trooper Lance Moorehouse was appointed as acting sergeant on December 5, 2009.

22. Trooper Neal Picillo was appointed as acting sergeant on March 12, 2011.

23. Trooper Erik Ruczynski was appointed as acting Sergeant on June 4, 2011.

24. Notably each of the promoted Troopers have held the temporary promotional titles for several years, pending formal promotion.

25. Each of the above Troopers was appointed to the acting positions because they held the highest score on the list for promotion and because of the mutually explicit understanding that those holding the highest numerical score would be placed in the acting appointment awaiting formal promotion.

26. On or about February 5, 2013 the Office of the Attorney General acting through its agents, directed the Division of State Police to remove the Troopers and Sergeant, listed above, from their acting positions - without explanation.

(A memo memorializing this removal is attached hereto as Exhibit "C" which is incorporated herein by reference)(The handwritten notations on this memo are by Christopher Burgos)

27. In this matter the Attorney General has determined that certain troopers and non-commissioned officers are ineligible for either temporary or permanent promotion. The Attorney general "ordered" the Superintendent to strip the eligibility of several troopers from serving as acting Sergeants or as an acting Lieutenant. Being stripped of eligibility for promotion, such troopers were thereby removed from their temporary appointments.

28. The Superintendent has followed the directive to strip them of their eligibility but has objected to it.

29. The directive from the Attorney General removed each of the aforementioned officers from the promotional eligibility list for reasons other than objective test scores although the lists apparently have remained unchanged. Troopers and a Sergeant were simply "blacklisted" from their eligibility to either temporary or formal promotion even though they remain the highest ranked.

30. No reason was given for their blacklisting or removal.

31. None of the Troopers who have been removed from their acting positions and stricken from the promotional eligibility lists were given any prior notice or opportunity to be heard. No notice was given either before their name was removed from the eligibility list or after they were removed from their acting positions.

32. Since the acting post is directly linked, intertwined and interchangeable with the formal promotional eligibility list, their opportunity for promotion has been all but eliminated, yet the Division of State Police and the Attorney General has refused to provide reason to any of the individuals or their respective unions.

33. The obvious implication from the demotions is that they have done something very wrong. Since their removal from the acting positions was published by the State, notifying all personnel of their removal, their reputation has been damaged within their profession. It reflects adversely on their character and on their professional development. Here the affected troopers have been dispossessed of the indicia of their provisional titles. In the case of the Lieutenant

demoted to Sergeant he no longer wears a white shirt, he no longer wears an officers cap. Moreover Lieutenants typically have their own office, control their own schedule and have a take home car, all of which will be stripped from him.

34. The affected provisional Sergeants, who have been demoted will lose their "stripes" and now will have to likely work with and report to one of the men over whom they had previously held supervisory authority.  The scope of supervision is a strong indicator of an officers' professional value in both the public and private sector.

35. Thus by removing the affected troopers from their acting positions and blacklisting them from promotional eligibility their professional futures have been hampered and diminished.  Here their interest in maintaining their positions and not being blacklisted without reason is significant.  The troopers who have been affected have not been given any opportunity to know what the State's reasons were for removing them nor have they been given any opportunity to counter the State's position in this case.

36. The troopers affected have simply been blacklisted by the Attorney General's Office with no opportunity to protect

11

their reputations. Affected Troopers have suffered a stigma to their reputation and professional advancement with no recourse.

37. The affected troopers have a legitimate claim and the right to be given the proper classification on the promotional eligibility list. They have earned their top rankings. They have the right to be eligible for promotion.

38. The Superintendent of State Police has objected to their removal from the acting positions to which they were assigned and also objected to their blacklisting from the promotional eligibility list.

39. As such their "blacklisting" and removal from the acting positions trigger the requirement for an inquiry that comports with procedural due process. In this case the Troopers who have been affected were provided with no reason why they have been removed from the acting positions and blacklisted from promotional eligibility. They have a significant interest in retaining the acting position and the obvious value of serving in a supervisory position.

40. They have had no opportunity to clear their names. In this

case the affected troopers have been removed from their positions without notice or an opportunity to be heard, over the objections of the Superintendent of State Police. The affected troopers have been put in the untenable position of not knowing why they have been removed from their positions and blacklisted from the promotional eligibility list.

41. The STFA has filed contractual grievances on behalf of all of the affected Troopers. (True Copies of the grievances filed on behalf of the individual Troopers affected within the matter are attached as Exhibit D" and are incorporated herein by reference)

42. However, the STFA collective bargaining agreement states at Page 19 Article XXII (Out of Title Work)(Exhibit "A" hereto) that removal from an acting assignment may not be contractually challenged.

> "Any decision to initiate or terminate any acting assignment shall be within the sole discretion of the superintendent *and shall not be subject to any grievance procedure outlined in this Agreement*".

43. The Superintendent of State Police, relying on this contract clause, thus denied the grievances stating that any remedy is unavailable. He answered the grievance as follows.

> "The grievance challenges the removal of

> members from acting assignments as ordered in the Superintendent's Personnel Order. Because the parties' collective negotiations agreement specifically provides that the termination of any acting assignment is within the sole discretion of the Superintendent and is not subject to the grievance procedure. The relief sought in the grievance is not available."
>
> (A true copy of the responses to the individual grievances, referenced above, by the Superintendent of State Police are attached hereto as Exhibit E"

44. There is no meaningful post deprivation process of which the affected Troopers can avail themselves. Moreover, even if such a process did exist, the State, in blacklisting such employees has not provided a reason which they can adequately resist or answer or give their side of the case.

45. Plaintiffs now bring the within action seeking to enjoin the State from blacklisting, revoking promotional eligibility and otherwise enjoining the removal of the affected troopers from their acting positions as there is no other remedy which can make them whole.

I hereby certify that the foregoing statements are true and accurate to the best of my knowledge. I am aware if any of the foregoing statements are willfully false, I am subject to punishment.

_____
CHRISTOPHER BURGOS, STFA PRESIDENT

Date: April 4, 2013