**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STATE TROOPERS FRATERNAL ASSOCIATION OF NEW JERSEY, on behalf of its individual members, and all other persons similarly situated,<br><br>And<br><br>STATE TROOPERS NON-COMMISSIONED OFFICERS ASSOCIATION OF NEW JERSEY, on behalf of its members, and all other persons similarly situated but un-named,<br><br>Plaintiffs,<br><br>    v.<br><br>STATE OF NEW JERSEY, Office of the Attorney General, Jeffrey Chiesa, Attorney General of the State of New Jersey; Division of Law and Public Safety; Division of State Police; Superintendent of State Police, Joseph R. Fuentes,<br><br>Defendants. | C.A. No. 3:13-cv-2193 (PGS)<br><br><br>CIVIL ACTION |

---

BRIEF ON BEHALF OF DEFENDANTS IN OPPOSITION TO
PLAINTIFFS' ORDER TO SHOW CAUSE

---

LISA A. PUGLISI
Assistant Attorney General
609-292-8567
LISA.PUGLISI@DOL.LPS.STATE.NJ.US
Attorney of Record
    On the Brief

JEFFREY S. CHIESA
Attorney General of New Jersey
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, N.J. 08625-0112
Attorney for Defendants

**TABLE OF CONTENTS**

Page No.

PRELIMINARY STATEMENT...........................................1

PROCEDURAL HISTORY AND COUNTERSTATEMENT OF FACTS................2

ARGUMENT        ...............................................6

    POINT I

    THE COURT SHOULD DISREGARD THE PARAGRAPHS OF CHRISTOPHER
    BURGOS'S CERTIFICATION THAT ARE NOT WITHIN HIS PERSONAL
    KNOWLEDGE, OR CONTAIN ARGUMENTS OF FACT OR LAW.............6

    POINT II

    THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR INJUNCTIVE
    RELIEF BECAUSE IT FAILS TO SATISFY THE CRITERIA REQUIRED
    FOR SUCH EXTRAORDNARY RELIEF..............................8

        A.   Plaintiffs fail to establish a reasonable
           likelihood of success because the actions
           complained of are specifically provided for in
           their bargained-for contract, and were not in
           violation of any constitutional right...............11

        B.   Plaintiffs fail to establish irreparable harm
           because their due process rights have not been
           violated............................................24

        C.   The Court should deny injunctive relief because the
           State's interest in  determining who to promote to
           the Division's supervisory ranks far outweighs any
           interests asserted by the Plaintiffs................24

CONCLUSION        ...........................................27

i

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES CITED</u>

<u>Albright v. Oliver</u>, 510 U.S. 266 (1994) .......................12

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)..........................6

<u>AT&T v. Winback</u>, 42 F.3d 1421 (3d Cir. 1994)...................10

<u>In re Arthur Treacher's Franchisee Litigation</u>,
        689 F.2d 1137 (3d Cir. 1982) ...........................10

<u>Board of Regents v. Roth</u>, 408 U.S. 564 (1972).......14, 15, 19-20

<u>Bishop v. Wood</u>, 426 U.S. 341 (1976)........................11, 20

<u>Cleburne v. Cleburne Living Center, Inc.</u>,
        473 U.S. 432 (1985) ...................................22

<u>Continental Group, Inc. v. Amoco Chemicals Corp.</u>,
        614 F.2d 351 (3d Cir. 1980) ...........................10

<u>Dee v. Borough of Dunmore</u>, 549 F.3d 225
        (3d Cir. Pa. 2008) ....................................17

<u>Dewey v. Volkswagen AG</u>, 558 F.Supp.2d 505 (D.N.J. 2008).........6

<u>Eccles v. Peoples Bank of Lakewood Village</u>,
        333 U.S. 426 (1948) ....................................9

<u>Engquist v. Or. Dep't of Agric.</u>, 553 U.S. 591 (2008) .........23

<u>Frank's GMC Truck Ctr., Inc. v. General Motors Corp.</u>,
        847 F.2d 100 (3d Cir. 1988) ............................9

<u>Greenholtz v. Inmates of Neb. Penal & Co. Complex</u>,
        442 U.S. 1 (1979) .....................................13

<u>Hill v. Borough of Kutztown</u>, 455 F.3d 225 (3d Cir. 2006).......13

<u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>,
        882 F.2d 797 (1989) ...................................25

<u>Kos Pharmaceuticals, Inc. v. Andrx Corp.</u>, 369 F.3d
        700 (3d Cir. 2004) .....................................9

ii

MCI Telecomm. Corp v. Bell Atlantic Pennsylvania,
     271 F.3d 491 (3d Cir. 2001) ............................15

McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994)................15

Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)...................10

Mudric v. Attorney General, 469 F.3d 94 (3d Cir. 1995)........13

Nicholas v. Penn. State Univ. 227 F.3d 133
     (3d Cir. 2000) ....................................12, 15

Perry v. Sinderman, 408 U.S. 593 (1972).......................13

Saucier v. Katz, 533 U.S. 194 (2001) .........................10

Stana v. School District of the City of Pittsburgh,
     775 F.2d 122 (3d Cir. 1985) .............................16

Virginian R. Co. v. Railway Employees, 300 U.S. 515 (1937).....25

Virginian R. Co. v. United States, 272 U.S. 658 (1926)........10

Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982)..............25

Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989) ....10

Winter v. NRDC, Inc., 555 U.S. 7 (2008).....................9, 25

Yakus v. United States, 321 U.S. 414 (1944)...................25

STATE CASES CITED

In re Carberry, 556 A.2d 314 (N.J. 1989)......................19

Dolan v. City of East Orange, 670 A.32d 587
     (N.J. Super. Ct. App. Div. 1996) ...............20, 21, 22

Nicoletta v. North Jersey District Water Supply Comm'n,
     390 A.2d 90 (N.J. 1978) ................................21

Williams v. Civil Serv. Commission, 329 A.2d 556 (N.J. 1974)...21

<u>UNITED STATES CONSTITUTION CITED</u>

U.S. Const. Amend. XIV, § 1................................17, 18

<u>STATE STATUTES CITED</u>

N.J. Stat. Ann. § 53:1-5.3................................17, 18

N.J. Stat. Ann. § 53:1-5.8....................................18

N.J. Stat. Ann. § 53:1-8.1....................................19

N.J. Stat. Ann. § 53:1-9.2(e).................................18

<u>FEDERAL COURT RULES</u>

L.Civ.R. 7.2...................................................6

## **PRELIMINARY STATEMENT**

This case is about two unions seeking injunctive relief to demand a State agency do something that their contract specifically assigns to the discretion of the Superintendent of the New Jersey State Police.  The unions ask this Court to countermand the Superintendent's decisions on structuring his agency, to return to acting titles those individuals that the Superintendent removed consistent with the authority reserved to him.  Their plea for injunctive relief must fail, as they fail to satisfy the necessary criteria for the extraordinary relief.

Plaintiffs filed this matter on behalf of five New Jersey State Police troopers who were placed in acting titles pursuant to explicit language in their respective negotiated contract, then subsequently removed by the Superintendent pursuant to explicit language in their contract.

The negotiated language could not be clearer, and Plaintiffs do not contest otherwise.  Indeed, they admit that their contracts provide that the Superintendent, at his discretion, may place a trooper in an acting assignment, and may remove a trooper from an acting assignment, at his discretion, without notice or a hearing. They also admit that, pursuant to the contracts, these decisions are not subject to the grievance procedure.

1

Nevertheless, Plaintiffs seek the intervention of this Court, claiming that the decisions by the Superintendent, which wholly comported with the contracts, violated their civil rights.

Their claims fail. Plaintiff unions, having negotiated and agreed to the very labor agreements that grant the Superintendent such broad discretion to place individuals in and remove them from acting positions, cannot now eviscerate those provisions in this Court. Additionally, Plaintiffs can fashion no constitutional property right to an acting title and, therefore, their request for injunctive relief should be denied. Moreover, Plaintiffs' mere speculation that the troopers have been "blacklisted" from future promotional opportunities is wholly unsupported by any facts, and belied by the terms of their contracts.

## PROCEDURAL HISTORY AND COUNTERSTATEMENT OF FACTS

Plaintiffs State Troopers Fraternal Association of New Jersey and State Troopers Non-Commissioned Officers Association of New Jersey, the organizations representing New Jersey State Troopers below the rank of Sergeant and non-commissioned officers, respectively, seek injunctive relief against the State of New Jersey, Office of the Attorney General; Attorney General Jeffrey Chiesa; Department of Law and Public Safety (improperly plead as the "Division of Law and Public Safety"); Division of State Police; and Superintendent of the State Police Colonel Joseph R. Fuentes.

2

Plaintiffs' respective collective negotiation agreements (hereinafter "contracts")[3] provide the following (Article XXII in the Trooper Contract, Article VII in the Non-Commissioned Officers Contract), entitled "OUT-OF-TITLE WORK:"

> Out-of-title work assignments occur when a member is formally designated to occupy a position in an acting capacity which is structured at a higher rank in the then currently published staffing tables of the Division.
>
> ...
>
> Following completion of the eight (8) bi-weekly pay periods, the member shall receive the rate of pay of the higher rank until either promoted according to the procedures adopted by the Superintendent or the acting assignment is terminated.  Any decision to initiate or terminate any acting assignment shall be within the sole discretion of the Superintendent and shall not be subject to any grievance procedure contained in this Agreement.  Time served in an acting assignment at a higher rank will not be given consideration toward any promotional decision, toward computation of any probationary period, and/or toward computation of seniority at the higher rank.
>
> [Certification of Christopher Burgos, Exhibits A and B.]

Pursuant to this provision, the Superintendent assigned Dewey Bookholdt, John Cardini, Lance Moorehouse, Neal Picillo, and Erik

---

[3] Although the contracts provided by Plaintiffs were effective July 1, 2004 to June 30, 2008, Defendants submit that the current contracts contain the same language with regard to out-of-title work assignments.  If so requested by the Court, Defendants will provide the Court the current agreement.

Ruczynski (hereinafter "the troopers") to serve in acting capacities –– Buckholdt as Acting Lieutenant and the other troopers as Acting Sergeants. (Id. at ¶¶18 – 23.) In February 2013, the Superintendent terminated these officers from their acting assignments. (Id. at ¶26.) They returned to the titles they held prior to their appointment to the acting assignments.

Contrary to the allegations contained in Mr. Burgos' certification, the troopers have not been "blacklisted" from any promotional consideration in the future. (Id. at ¶ 29). Notably, his certification is devoid of any factual support for this conclusion. The only decision that was made was the Superintendent's decision to remove the troopers from their acting assignments.

Plaintiffs filed an expedited grievance on behalf of the troopers, which was denied for failure to meet the criteria to expedite a grievance. (Id., Exhibit D.) Although Plaintiffs claim that their grievances were denied, the only decision rendered by the Superintendent was whether to handle the grievance on an expedited basis. Their grievances remain pending. (Id., Exhibit E.)

On April 5, 2013, Plaintiffs filed the instant complaint, with an order to show cause seeking to reinstate the troopers in their

4

acting assignments until they receive pre-deprivation procedures
not provided for in their contracts.

## ARGUMENT

## POINT I

### THE COURT SHOULD DISREGARD THE PARAGRAPHS OF CHRISTOPHER BURGOS'S CERTIFICATION THAT ARE NOT WITHIN HIS PERSONAL KNOWLEDGE, OR CONTAIN ARGUMENTS OF FACT OR LAW

L.Civ.R. 7.2 restricts the contents of affidavits to "statements of fact within the personal knowledge of the affiant." Affidavits shall not contain arguments of the facts and the law, and the Court shall not consider legal arguments or summations contained therein. L. Civ. R. 7.2(a); Dewey v. Volkswagen AG, 558 F.Supp.2d 505, 510 n. 1 (D.N.J. 2008) (striking portions of a declaration that contained legal and factual arguments). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that a court reviewing a motion to dismiss must accept as true the plaintiff's pled factual allegations as true but it may disregard any "legal conclusions.")

Here, Christopher Burgos's Certification is replete with allegations that are not within his personal knowledge, and factual and legal arguments and conclusions that should be disregarded by the Court.  For example, Mr. Burgos argues in his Certification that the Troopers enjoy a "right" to the appointments they desire. See Certification of Christopher Burgos, ¶¶13, 14, 15, 16, 17, 18, 25.  This claim is legal argument and conclusion, is not the proper subject of an affidavit and should be disregarded by this Court.

6

Mr. Burgos additionally claims that the troopers were "blacklisted," however, this amounts to nothing more than mere speculation, is unsupported with any facts and should be disregarded. See Id. at ¶¶27, 29, 30, 31, 32, 35, 36, 37, 39, 40. Finally, Mr. Burgos asserts that the Superintendent disagreed with the Attorney General's alleged directive to strip the troopers of their eligibility for promotion. See Id. at¶¶ 28, 38. These allegations are not within the personal knowledge of Mr. Burgos as they represent mere conjecture, and they too should be disregarded by the Court.

<u>**POINT II**</u>

**THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF BECAUSE IT FAILS TO SATISFY THE CRITERIA REQUIRED FOR SUCH EXTRAORDNARY RELIEF.**

The Court should deny Plaintiffs any and all requested injunctive relief because they are unable to satisfy the factors necessary for the extraordinary remedy they seek.  They complain about actions of the Superintendent that are specifically provided for in the labor agreement that they negotiated, and they are unable to establish a reasonable likelihood of success on the merits on any of their claims.  Furthermore, Plaintiffs are unable to demonstrate irreparable harm because they have no property interest in an acting assignment and therefore, no process was due to them prior to their termination from these assignments.  Absent both of these two prerequisites, injunctive relief cannot issue.  Additionally, Plaintiffs' requested relief is not only contrary to a binding contract, it is against the public interest, as the Superintendent of the State Police is vested with the authority to appoint and remove employees from acting assignments.  When they negotiated the contracts, Plaintiffs agreed that not even an arbitrator should be able to intercede in these actions by the Superintendent; it certainly follows that the courts too should restrain from such involvement.

8

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. NRDC, Inc., 555 U.S. 7, 24 (2008); see also Frank's GMC Truck Ctr., Inc. v. Gen'l Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988) (observing that "the grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances."). It should be "granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Vill., 333 U.S. 426, 431 (1948). "Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." Id.

Plaintiffs bear the burden of establishing each of the criteria in the four-factor test. The Third Circuit has defined the "familiar" test for preliminary relief:

> A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.
>
> [Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004).]

The first two factors are mandatory. "To obtain a preliminary injunction, the moving party must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if

9

relief is not granted." <u>Morton v. Beyer</u>, 822 F.2d 364, 367 (3d Cir. 1987); <u>see also</u> <u>In re Arthur Treacher's Franchisee Litigation</u>, 689 F.2d 1137, 1143 (3d Cir. 1982) (commenting that "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury[] must necessarily result in the denial of a preliminary injunction."). Nonetheless, even irreparable harm does not render injunctive relief a matter of right. <u>Virginian R. Co. v. United States</u>, 272 U.S. 658, 672 (1926). When the other factors are relevant, plaintiffs must demonstrate that "all four factors favor preliminary relief." <u>AT&T v. Winback</u>, 42 F.3d 1421, 1427 (3d Cir. 1994). When considering the factors, the Court may also consider harm to the public. <u>Continental Group, Inc. v. Amoco Chemicals Corp.</u>, 614 F.2d 351, 357 (3d Cir. 1980).

The Court should deny any injunctive relief in this matter because Plaintiffs fail to establish either a reasonable likelihood of success or irreparable harm.[4] Moreover, the public interest weighs strongly against any form of relief in this matter.

---

[4] In addition to the substantive reasons Plaintiff will not succeed on the merits of their case, the defendants are also entitled to Eleventh Amendment immunity (<u>See</u> <u>MCI Telecomm. Corp v. Bell Atlantic Pennsylvania</u>, 271 F.3d 491 (3d Cir. 2001)) and qualified immunity (<u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194 (2001)); and the entity defendants are not "persons" subject to suit (<u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989)).

**A. Plaintiffs fail to establish a reasonable likelihood of success because the actions complained of are specifically provided for in their bargained-for contract, and were not in violation of any constitutional right.**

Plaintiffs cannot demonstrate a likelihood of success on the merits because the Superintendent acted consistent with the express terms of the collective negotiations agreements in removing the troopers from their acting assignments. Nor did the removals violate any constitutional rights. Notably, the United States Supreme Court has admonished that the "federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." Bishop v. Wood, 426 U.S. 341, 359-60 (1976). Plaintiffs here are asking the extraordinary relief of this court for a personnel decision.

**1. There is no constitutional right to public employment, and Plaintiffs' unilateral expectations do not create a liberty interest.**

The Fourteenth Amendment provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law ..." U.S. Const. Amend. XIV, § 1. It is well-established that there is no constitutional substantive due process right to public employment. As the Supreme Court has explained, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family,

11

procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272 (1994). Indeed, even in instances involving a tenured employee -- a far cry from the entirely discretionary status afforded acting positions, and when the affected troopers remain members of an elite law enforcement agency -- the Third Circuit has determined that tenured public employment is not a fundamental property interest entitled to substantive due process protection. Nicholas v. Penn. State Univ., 227 F.3d 133 (3d Cir. 2000). The Court found:

> [T]enured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution. We agree ... that "it cannot be reasonably maintained that public employment is a property interest that is deeply rooted in the Nation's history and traditions..."
>
> [Id. at 143 (citation omitted).]

The Court found that public employment is "more closely analogous to those state-created property interests that this Court has deemed unworthy of substantive due process," and that this determination "comports with the Supreme Court's admonition that the federal judiciary should not become a general court of review for state employment decisions." Id. Contrary to Plaintiffs' assertion, there is no fundamental substantive due process right to public employment.

12

In order to state a claim for a violation of procedural due process rights, a person must allege the deprivation of an interest that constitutes a "liberty" or "property" interest within the meaning of the Fourteenth Amendment. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). A plaintiff "must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006). Therefore, the initial threshold issue with respect to plaintiff's procedural due process claim is whether plaintiff was deprived of a "cognizable liberty or property interest." Mudric v. Attorney General, 469 F.3d 94, 98 (3d Cir. 1995) (noting that "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie.")

A "person's interest in a benefit is a 'property' interest for due process purposes if there are ... rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." Perry v. Sinderman, 408 U.S. 593, 602 (1972). To possess a property interest in a benefit, a person must have more than a mere abstract need or desire for such a benefit. Rather, a person "must have a legitimate claim of

entitlement to it." <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). Such protected interests are generally "created and their dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." <u>Id.</u>

Here, Plaintiffs can state no legitimate claim of entitlement to an acting assignment, as these decisions have not been legislated or in any way regulated to create such a claim of entitlement. In fact, the only memorialization of the acting title is in collective negotiations agreements that assign the Superintendent the broadest discretion in initiating or terminating the assignments. Plaintiffs instead claim that the troopers have a constitutional right to placement on a promotional list, and that their rights were violated when they were "blacklisted" from any future promotional lists. Factually, this claim wholly lacks merit because the only decision rendered by the Superintendent was to remove them from their acting titles. Simply put, Plaintiffs' allegation that the troopers were "blacklisted" is pure speculation insufficient to carry their burden of demonstrating a likelihood of success.

Despite Plaintiffs' characterization of an intertwined process, an out-of-title acting assignment and the promotional process are two separate clauses in the contracts. The contracts specifically provide for a promotional process that must be adhered

14

to in promoting any trooper (Article VIII for the troopers and Article XV for the non-commissioned officers). (Certification of Christopher Burgos, Exhibits A and B.) Plaintiffs' claim that the troopers were somehow "blacklisted" from future eligibility lists is unsupported, and any allegation to the contrary is belied by the contracts' explicit terms regarding promotional procedures.

Plaintiffs claim that the Division and the troopers have an "explicit understanding" that the highest-ranked eligible person on the list is "entitled" to the temporary acting appointment. Again, this assertion is without basis. The contract provisions regarding out-of-title acting assignments and promotions are separate and distinct, and assign the authority and responsibility to initiate a placement into an acting title wholly within the discretion of the Superintendent. By way of contrast, the promotion to a permanent title is governed by the procedures outlined in the contract. Any unilateral expectation of an acting assignment or promotion is not a legitimate entitlement. Bd. of Regents v. Roth, 408 U.S. at 577. As the Third Circuit has noted, it has adopted an appropriately constrained approach to substantive due process, limiting substantive due process review to cases involving real property ownership. Nicholas, 227 F.3d at 141. Any asserted employment rights simply do not implicate substantive due process protections. See, e.g., McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994)

15

(en banc) ("employment rights are not 'fundamental' rights created by the Constitution.")

Moreover, even assuming _arguendo_ that the Division had typically placed the top-ranking person in the acting title, this does not create a legitimate entitlement that equates to a constitutionally protected property right. The contracts specifically provide for the acting assignments to be within the sole discretion of the Superintendent, and are not subject to grievance. Plaintiffs cannot have a legitimate claim of entitlement that is in direct contravention of explicit language in their contracts.

Plaintiffs cite _Stana v. School District of the City of Pittsburgh_, 775 F.2d 122 (3d Cir. 1985), for their proposition that they have a property interest in remaining on an eligibility list. Their reliance is misplaced. In _Stana_, the school had an established policy for placement and rank on the list and for the maintenance of that list for a specified period of time, four years. Stana's name was removed from the eligibility list prior to the expiration of the four years, without her notice or opportunity to be heard. The Court found that the promulgated policy had created a legitimate entitlement that required some process before a name could be removed. This case is wholly inapplicable here,

because the negotiated contract, not an established policy, governs the eligibility list.

Nor does <u>Dee v. Borough of Dunmore</u>, 549 F.3d 225 (3d Cir. 2008), assist Plaintiffs.  In <u>Dee</u>, the Court found that the plaintiff had a constitutionally protected property interest in his employment as a firefighter because Pennsylvania's civil service code provided that such an employee could only be suspended for good cause.  Thus, the state had created a property interest in remaining employed and could not remove an employee inconsistent with procedural due process.  Here, there is no such corollary provision: the contractual language that governs is unequivocal and the State has not created a property interest in an acting assignment.

## 2. There is no statutory right to remaining in an out-of-title acting work assignment

Plaintiffs claim that the troopers have a statutory property interest in remaining in an out-of-title acting work assignment, based on their misinterpretation of the statutes governing the State Police.

Plaintiffs point to <u>N.J. Stat. Ann.</u> § 53:1-5.3, which permits the Superintendent to establish a title or position on a temporary or permanent basis when the effective operation of the Division necessitates.  The statute provides that no appointment to the special title or position may be made until notice has been

17

provided to the Division members.  Plaintiffs also cite to N.J. Stat. Ann. § 53:1-5.8, which provides that all officers and troopers shall be appointed or reappointed by the Superintendent for a period of two years and shall be removable only after charges have been brought and a hearing granted; and to N.J. Stat. Ann. § 53:1-9.2(e), which provides that Division members' salaries are set by statute.  Plaintiffs then make a legal leap to the conclusion that these statutes, when read together, provide a statutory property interest in an acting assignment.

This argument fails.  Plaintiffs seek to rely on statutes that are inapplicable to an acting assignment.  N.J. Stat. Ann. § 53:1-5.3 provides that the Superintendent must prepare, update and post a catalogue that lists the Division's positions for enlisted members, and that he may establish "temporary or permanent" titles or positions.  This statute concerns the establishment of titles or positions, not the assignment of a trooper to the title or position on an acting basis.  Here, the troopers were assigned to a permanent title in an acting capacity, and therefore, this statute is wholly inapplicable to this case.  The remaining statutory provisions cited by Plaintiffs also concern permanent assignments to positions, not acting assignments, and therefore, Plaintiffs' claim that the State has created a statutory property interest in an acting assignment fails.

Plaintiffs cite In re Carberry, 556 A.2d 314 (N.J. 1989), for their proposition that there is a statutory right to an acting assignment. Carberry does not help them, though, because the law is clear that in order to have a protected property interest, an employee must have a legitimate claim of entitlement, which is not the case in acting assignments. In Carberry, the court found that the plaintiff trooper had a property and liberty interest in his continued employment with the State Police because New Jersey law provides that, after five years, state troopers may continue employment "during good behavior, subject to termination 'for cause.'" N.J. Stat. Ann. § 53:1-8.1. Thus, by enacting legislation that precluded tenured troopers from being fired without cause, the State had created a legitimate claim of entitlement.

Of course, no corollary statute provides similar protections to persons in acting titles. In fact, Plaintiffs and defendants have contracted for the exact opposite. Plaintiffs' claim that they have a protected property interest in their acting assignments is wholly unsupported by law.

The United States Supreme Court has established that public employees have a due process liberty interest in employment where the employee's "good name, reputation, honor, or integrity" is implicated in the reasons for the employee's discharge. Bd. of

Regents, 408 U.S. at 573.  The Court additionally found that, where the termination "imposed no stigma or other disability that foreclosed [plaintiff's] freedom to take advantage of other employment opportunities," there is no violation of the employee's due process liberty interest in employment.  Id.

The United States Supreme Court further narrowed the contours of due process by finding that there is no violation of a due process liberty interest when a public employee is discharged from a position that is "terminable at the will of the employer when there is no public disclosure of the reasons for the discharge."  Bishop v. Wood, 426 U.S. at 348.  Plaintiffs cannot assert that the troopers have a liberty interest in their acting assignments where Defendants did not publicly disclose any reason for the decision to remove them that could conceivably merit an opportunity for them to clear their "good name, reputation, honor, or integrity."

Plaintiffs point to Dolan v. City of East Orange, 670 A.2d 587 (N.J. Sup. Ct. App. Div. 1996), to lend credence to their assertion that at-will or provisional employees have a liberty interest in their employment such that they are entitled to a hearing.  Their interpretation of this case leaves out the crucial point: the court found a liberty interest existed because Dolan, although an at-will employee, was terminated for disciplinary reasons.  Because the

20

circumstances of his firing for cause could have impacted on his future employment, he was entitled to process before he could be terminated. <u>Id.</u> at 590-91. This factual scenario is in contrast to the Superintendent's decision here to terminate the troopers' acting assignments, which may be done at the Superintendent's discretion. Likewise, the internal cases cited in <u>Dolan</u> stand for the proposition that an at-will employee who is terminated for disciplinary reasons is entitled to a hearing (<u>Nicoletta v. North Jersey Dist. Water Supply Comm'n</u>, 390 A.2d 90 (N.J. 1978); and that where an at-will employee alleges wrongful termination based on speech protected by the First Amendment he is entitled to a post-deprivation evidentiary hearing (<u>Williams v. Civil Serv. Comm'n</u>, 329 A.2d 556 (N.J. 1974)). These cases are inapposite to the instant matter.

**3. Plaintiffs' claim that there is no adequate post-deprivation available in State law supports the fact that there is no liberty interest in out-of-title acting work assignments and the promotional process**

As discussed in Point A(1) above, there is no federal constitutional right to public employment. An employee's unilateral expectation of continued employment is insufficient, and a property interest only arises where the State has proactively created such a right. Here, the Division has not created a legitimate property interest in an acting work assignment; unlike

permanent employment with the Division, the State has not legislated the contours of an acting assignment.  To the contrary, the Division has contracted that out-of-title acting work assignments are at the discretion of the Superintendent and not subject to the grievance procedure.

To conjure a property interest in these temporary assignments and an allegation that the troopers fall within <u>Dolan</u>, Plaintiffs speculate that the troopers have been "blacklisted" by some unknown person, and that they are ineligible for any future promotional list or acting assignment.  Contrary to Plaintiffs' speculation, the troopers have not been "blacklisted," but rather, remain, per the contracts, eligible for any future promotional list or acting assignment.

**4. Plaintiffs' equal protection rights were not violated because they were treated like any other trooper in an acting assignment**

The Equal Protection Clause is essentially a directive that all individuals similarly situated should be treated alike. <u>Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985). Plaintiffs bear the burden of demonstrating that the groups that are treated differently are so similar that there is no rational basis for the distinctions made.  Notably, Plaintiffs do not allege that the Superintendent's decision to terminate the troopers acting assignments was made for any impermissible purpose.  This Court

22

should reject Plaintiffs' equal protection claims on the ground that the "class-of-one" -- or here, a "class-of-five" -- theory underpinning them does not apply to public employment. Engquist v. Or. Dep't of Agric., 553 U.S. 591 (2008). In Engquist, the Court held that the protections afforded under Equal Protection Clause are not implicated when a government employer is "alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." Id. at 606.

Moreover, Plaintiffs' factual claim -- the troopers were classified as non-promotable in violation of their equal protection rights -- is completely unfounded. Such a classification is wholly a product of Plaintiffs' own creation. There has been no classification of the troopers as ineligible for further promotion. The only action taken here was the removal of them from their out-of-title work assignments, and Plaintiffs' characterization of that action as a classification lacks any factual basis. They were treated no differently than any other trooper in an acting assignment, who is subject to removal at the discretion of the Superintendent. Moreover, the State has a rational basis for treating acting assignments differently than permanent assignments -- the State has a legitimate interest in determining who to promote into the supervisory ranks of the Division. An acting assignment may be terminated without notice, reason or cause; a

permanent assignment carries with it tenure that requires cause and a process for removal.

**B. Plaintiffs fail to establish irreparable harm because their due process rights have not been violated.**

Plaintiffs' claim that they have been irreparably harmed is circuitous: they allege that their due process rights have been violated and therefore, as a matter of law, they have suffered irreparable harm. Their contention fails because, as set forth fully above, the troopers do not have a constitutionally-protected property right in their acting assignment. Without a legitimate entitlement, no process is due.

Plaintiffs also claim that the troopers have suffered irreparable harm because their honor and integrity has been publicly called into question. They base this statement on their own interpretation that they must have done something wrong in order to be removed from their temporary, acting assignments, and not on any factual support. There has been no public statement regarding their "good name, reputation, honor, or integrity" such that process would be due.

**C. The Court should deny injunctive relief because the State's interest in determining who to promote to the Division's supervisory ranks far outweighs any interests asserted by the Plaintiffs**

The Court should deny Plaintiffs' request for injunctive relief because public interest advises against the Court's granting

24

the extraordinary and drastic remedy that plaintiff seeks here.  As the Supreme Court has made clear, preliminary injunctions should not issue where the public interest outweighs any irreparable harm established by Plaintiffs.  Winter, 129 S.Ct. at 376.  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).  "Courts of equity may, and frequently do, go much farther to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." Virginian R. Co. v. Railway Employees, 300 U.S. 515, 552 (1937); see also Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 803 (1989) (commenting that "[i]f this were a case where the public interest was directly affected, our consideration might be different.")  Accordingly, a court of equity may "in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the parties." Weinberger, 456 U.S. at 312 (quoting Yakus v. United States, 321 U.S. 414, 440 (1944)).

Here, the granting of injunctive relief is contrary to the public interest.  The Superintendent has been charged with maintaining the State Police.  In furtherance of that

responsibility, and ultimately, in furtherance of public safety and the law enforcement mission of that agency, the Superintendent is vested the discretion to initiate and terminate acting titles.  It is contrary to the public interest for a Court to render inoperative a provision of a contract negotiation agreement that is directly on point and to affect the Superintendent's ability to fulfill his responsibilities by so curtailing his discretion.

## CONCLUSION

The Court should deny Plaintiffs' request for injunctive relief because they fail to establish the necessary elements for such extraordinary relief.

Respectfully submitted,

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY

By: /s/_____
Lisa A. Puglisi
Assistant Attorney General

Dated: April 15, 2013