NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE TROOPERS FRATERNAL ASSOCIATION OF NEW JERSEY and STATE TROOPERS NON-COMMISSIONED OFFICERS ASSOCIATION OF NEW JERSEY,<br><br>PlaintiffS,<br><br>v.<br><br>STATE OF NEW JERSEY, et al.,<br><br>Defendants. | Civ. No. 13-2193<br><br>OPINION |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter has come before the Court on the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) of Defendants the State of New Jersey, Office of the Attorney General, Jeffrey Chiesa, Division of Law and Public Safety, Division of State Police, and Joseph Fuentes (collectively, "Defendants"). (ECF No. 36). Plaintiffs State Troopers Fraternal Association of New Jersey and State Troopers Non-Commissioner Officers Association of New Jersey (collectively, "Plaintiffs") oppose. (ECF No. 38). Upon consideration of the parties' written submissions, the Court will grant Defendants' motions as to the federal claims and dismiss the pending state law claims for lack of jurisdiction.

BACKGROUND

Plaintiffs in this case are the State Troopers Fraternal Association of New Jersey and the State Troopers Non-Commissioned Officers Association of New Jersey, which are both the unions representing officers in the New Jersey State Police who hold the rank below Sergeant

1

and who hold various ranks as non-commissioned officers, respectively. Though these unions have two separate collective bargaining agreements with the State of New Jersey, the relevant portions of those agreements are identical for the purposes of this case, and the agreements will be referred to collectively as the "CBA."

The basis of Plaintiffs' claims are certain actions taken by the office of the Attorney General of New Jersey and the Superintendent of State Police, Joseph Fuentes ("Fuentes"), in 2012 and 2013. Previous to this time, four commissioned officers—Trooper John Cardini, Trooper Lance Moorehouse, and Trooper Erik Ruczynski—and one non-commissioned office, Sergeant First Class Dewey Bookholdt, had all received provisional promotions to higher ranks. These provisional promotions entitled these five officers (collectively, the "Troopers") to receive the pay of the higher ranks and to wear the insignia of those ranks. However, the CBA specifies that any decision to put an officer into a provisional rank or remove him from that rank is left to the discretion of the Superintendent of the State Police, and that officers adversely affected by such decisions may not file grievances.

In June 2012, Fuentes submitted a Request for Promotions to the Attorney General. Included in this list were the five Troopers, though, because they had been put into provisional ranks, they were not present on the promotional list. The CBA specifies that promotional decisions must be made using a promotional list created with established criteria; that the promotional list is to serve as the exclusive basis for making promotional decisions; and that the officers rated highest on the promotional list must be the first to be promoted, with the exception that if the Superintendent of the State Police determines that the candidate with the highest score is not qualified and denies him the promotion, the list may not be used for further promotions.

Plaintiffs allege that the Attorney General's office decided to deny the promotion requests to the Troopers, and that in February 2013 it directed Fuentes to order that the Troopers

2

be removed from their provisional ranks. Plaintiffs also allege that the Troopers are now ineligible for any future promotions. Plaintiffs took a number of actions to challenge these decisions. First, they filed requests for expedited grievances, but Fuentes, as Superintendent, denied those requests. The Plaintiffs also filed a notice of appeal in New Jersey Superior Court, which is currently pending.

Plaintiffs filed their Complaint initiating this case in federal court on April 5, 2013 and requested a preliminary injunction ordering Defendants to initiate a pre-deprivation hearing for the Troopers. The case was originally assigned to the Honorable Peter G. Sheridan.[1] On April 19, the Court issued an order from the bench denying the preliminary injunction. (ECF No. 49-2, April 19, 2013 Tr., at 11). On May 9, 2013, the Court issued a written order denying the preliminary injunction and finding that "the matters [in the case] should be handled pursuant to the applicable contractual provisions." (ECF No. 11, Order). The parties understood this order to mean that the Plaintiffs should be able to file a grievance under the CBA, which would be arbitrated. However, the Court's order was premised on an understanding that Fuentes had decided that the issues identified in the Complaint could and should be arbitrated. In the April 19, 2013 hearing in which the Court ruled from the bench on Plaintiff's preliminary injunction application, the Court stated "Well, as far as I can tell, Superintended Fuentes said that in his reply to you that he denied the expedited hearing. But as I understood it, he let the grievance procedure in the ordinary course of events, as I framed it, to go forward. So I think the answer to [the question of whether Plaintiffs' complaint should be heard under the CBA's grievance process] is yes, as long as it complies with the CBA." (ECF No. 49-2, April 19, 2013 Tr., at 11).

---

[1] On July 30, 2015, Judge Sheridan recused himself from this case, and it was eventually reassigned to the Honorable Anne E. Thompson. (ECF Nos. 46, 47).

The parties then began the arbitration process per the Court's Order. However, the Defendants also filed a scope of negotiations petition before the New Jersey Public Employment Relations Commission ("PERC") on August 2, 2013, seeking to enjoin the arbitration on the grounds that Plaintiffs' complaints were not grievable. PERC is a state-created commission that has many powers, including the power to determine "whether a matter in dispute is within the scope of collective negotiations." N.J.S.A. 34:13A–5.4(d). On May 29, 2014, PERC ruled in Defendants' favor and ordered that the arbitration must stop. On February 6, 2015, Plaintiffs filed the First Amended Complaint ("FAC") in this case, and Defendants subsequently moved to dismiss it.

On May 21, the Court requested that the parties submit briefs concerning whether the case should be ordered back to arbitration. The Court now finds that because the decision ordering the case to arbitration was made in deference to Fuentes' decision that these issues could be arbitrated, and that because PERC, which, under New Jersey law has "primary jurisdiction to make a determination on the merits of the question of whether the subject matter of a particular dispute is within the scope of collective negotiations," has determined that these issues cannot be arbitrated, that this case should not be ordered back to arbitration. *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 393 A.2d 278, 282–83 (N.J. 1978).

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual

4

allegations and construe the complaint in the light most favorable to the plaintiff.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  But, the court should disregard any conclusory allegations proffered in the complaint.  *Id.*  Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).  This requires more than a mere allegation of an entitlement to relief.  *Id.*  "A complaint has to 'show' such an entitlement with its facts." *Id.*  A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged.  *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).  Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

ANALYSIS

**A. Section 1983 Claims**

Counts One, Two, and Three of the FAC invoke 42 U.S.C. § 1983.  "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law.  The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (internal citations omitted).

Plaintiffs' claims focus on two distinct but related actions allegedly taken by Defendants: the decision to remove the Troopers from their provisional rank and the decision to prevent the Troopers from being considered for further promotions.  Though Plaintiffs use the term "blacklisted" throughout the FAC and their Opposition Brief to refer to both of these actions, that

5

usage confuses the issue. The removal of the Troopers from their provisional ranks allegedly came as a result of a directive from the Attorney General to Fuentes. The alleged prevention of the Troopers from being promoted in the future is entirely speculative at this point, however. Plaintiffs are not able to point to any contractual provision, written policy, or state law that mandates that state troopers who are removed from provisional rank must be deemed ineligible for any future promotion. Plaintiffs admit that whether the Troopers' removal from their provisional rank will affect their future promotional eligibility is an open question: in their Opposition Brief, Plaintiffs state "they were stripped of their acting titles and denied formal promotion. No reason was given for this decision to blacklist. . . . It is unclear if this blacklisting ineligibility is temporary or permanent for their entire career." (ECF No. 38, Pls.' Opp'n Br. at 1). The decision issued by the PERC illuminates why Plaintiffs cannot allege that the Defendants have prevented the Troopers from attaining future promotions: "[b]ecause the State Police has not completed a promotional process since September 2012 . . . no promotional procedures have been applied to [the Troopers]." *In re State of New Jersey (State Police)*, PERC No. 2014-80, 40 NJPER ¶ 180, 2014 WL 2858619 (May 29, 2014).

Thus, the Troopers are in the same situation as the Plaintiffs in *Wilmington Firefighters Local 1590, Int'l Ass'n of Firefighters v. City of Wilmington, Fire Dept.*, 824 F.2d 262 (3d Cir. 1987). In that case, the Third Circuit ruled that because the allegedly discriminatory promotion list for firefighters in Wilmington, Delaware had expired with no promotions having been made from it, any challenge to the promotion list was moot and thus non-justiciable. *Wilmington Firefighters*, 824 F.2d at 265–66. Here, the claim that the Troopers have been improperly prevented from receiving promotions is not ripe because the State Police have not completed a promotional process since the Troopers were removed from their provisional ranks. *See also Massachusetts Ass'n of Afro-America Police, Inc. v. Boston Police Dept.*, 973 F.2d 18, 20–22

6

(1st Cir. 1992) (dismissing a complaint alleging that changes to hiring policies would lead to discriminatory results on ripeness grounds because the police department had not yet undertaken efforts to make promotions under the new policies). This is why Plaintiffs have not alleged that they have been denied promotion or even improperly placed on the promotion list: they have only made conclusory assertions that they will be denied promotion in the future. Thus, even if the Troopers have a constitutional right to be promoted or to be allowed a hearing if denied promotion, those rights have not yet been injured by Defendants. Accordingly, the only proper basis for Plaintiffs' § 1983 claims at this time is Defendants' removal of the Troopers from their provisional ranks.

*Equal Protection*

Plaintiffs' first claim is premised on the Equal Protection Clause, and in that claim, Plaintiffs allege Defendants have acted arbitrarily by classifying them as ineligible for promotion. As discussed above, any argument regarding future promotional ineligibility is not ripe; instead, the Court will only consider whether Plaintiffs have an Equal Protection claim with regard to the Troopers removal from their provisional rank. The Equal Protection Clause states, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. "Before reaching the merits of an Equal Protection claim, a court must determine which standard of review should apply to its analysis of the challenged law. Laws or regulations that involve a fundamental right or treat a suspect classification differently are subjected to the most exacting review, strict scrutiny. If, on the other hand, the law at issue concerns only economic or social policy, and does not touch upon a suspect classification, then the law 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *State Troopers Non-*

7

*Commissioned Officers Ass'n of New Jersey v. New Jersey*, 643 F. Supp. 2d 615, 624 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  Here, Plaintiffs have not alleged that Defendants' actions implicate fundamentals Rights or that the Troopers were treated differently because of a suspect classification; hence, as Plaintiffs tacitly admit in their Opposition Brief, the standard of review to be applied is rational basis.

In *Engquist v. Oregon Dept. of Agric.*, the Supreme Court explained that Equal Protection challenges to public employment practices that do not involve suspect classifications are likely meritless.

> Thus, the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context.  To treat employees differently is not to classify them in a way that raises equal protection concerns.  Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship.  A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

*Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 605 (2008).  Plaintiffs cannot plausibly make the case that there is no reasonably conceivable explanation that could provide a rational basis for the Troopers' being removed from their provisional ranks.  As the *Engquist* court indicates, such a decision is an exercise of the discretion given to the Superintendent of State Police under the CBA that "typically characterizes the employer-employee relationship."  There are many conceivable explanations that would provide a legitimate reason for the Attorney General's office to order the Superintendent to remove the Troopers from their provisional ranks: they may have performed poorly in those provisional ranks; there may have been a greater need for them to return to their normal rank than for them to stay in the provisional ranks; there may have been budget constraints preventing them from continuing to serve at the higher level.  In a rational basis review,

"those attacking the rationality of the . . . classification have the burden 'to negative every conceivable basis which might support it.'" *F.C.C. v. Beach Commc'ns*, 508 U.S. 307, 315 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). Plaintiffs have failed to carry this burden. Accordingly, Plaintiffs' Equal Protection claims will be dismissed.

*Due Process and Property Interests*

In Count Two, Plaintiffs claim that the Defendants' actions in removing them from their provisional ranks deprived them of a property interest in keeping those ranks and imposed a stigma on them. The Supreme Court has instructed that "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 11–12 (1978); *see also Dee v. Borough of Dunmore*, 549 F.3d 225, 230 (3d Cir. 2008). Plaintiffs do not allege that the Troopers could not be removed from their provisional ranks except for cause. Plaintiffs would not be able to make such allegations, as the CBA states, "[a]ny decision to initiate or terminate any acting assignment shall be within the sole discretion of the Superintendent and shall not be subject to any grievance procedure." *In re State of New Jersey (State Police)*, PERC No. 2014-80, 40 NJPER ¶ 180, 2014 WL 2858619 (May 29, 2014). Accordingly, the Troopers did not have any property interest in their provisional ranks, and they cannot maintain a § 1983 claim on a deprivation of those ranks.

Similarly, the Troopers cannot maintain claims for stigmatic injury because of the loss of their provisional ranks. To be able to make a claim for harm to reputation, a plaintiff must show that he was also deprived of some other right or status created by state law or the Constitution. *Dee*, 549 F.3d at 233–34 (citing *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1993); *Hill v.*

*Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006); *Sturm v. Clark*, 835 F.2d 1009, 1012 (3d Cir. 1987). "This has been referred to as the 'stigma-plus' test." *Dee*, 549 F.3d at 234. Because the Troopers did not have any entitlement to their provisional ranks, even if they were stigmatized by losing those ranks, they could not maintain a § 1983 claim for such stigmatization. Plaintiffs' claims in Count Two must thus be dismissed.

*Procedural Due Process*

Plaintiffs' claims in Count Three pertain to alleged violations of procedural due process. In assessing a procedural due process claim, "courts look to (1) whether the interest deprived falls within the scope of the Fourteenth Amendment's protections of 'life, liberty, or property' and (2) 'whether the procedures available provided the plaintiff with 'due process of law.'" *Kairo-Scibek v. Wyoming Valley West School Dist.*, 880 F. Supp. 2d 549, 556 (M.D. Pa. 2012) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Because, as discussed above, the Troopers did not have a property interest in keeping their provisional ranks, they cannot maintain a procedural due process claim for the deprivation of those ranks. This claim will be dismissed.

**B.  *Ex Post Facto* Punishment**

In Count Four, Plaintiffs claim that the Troopers were penalized for past conduct, which they argue, violates the *ex post facto* clause of Article I, Section 10 of the Constitution. That clause states, "No State shall . . . pass any . . . *ex post facto* Law." U.S. Const. art. I, § 10. The Supreme Court has explained that "it has long been recognized by this Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990) (citing *Calder v. Bull*, 3 Dall. 386, 390–92 (1798); *Miller v. Florida*, 482 U.S. 423, 430 (1987)). Plaintiffs have

10

not identified any criminal statutes that have harmed them. Accordingly, this claim must be dismissed.

## C. State Law Claims

All of Plaintiff's federal claims are dismissed. Pursuant to 28 U.S.C. § 1367(c)(3) and Third Circuit precedent, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims. *Kalick v. Northwest Airlines Corp.*, 372 Fed. App'x 317, 322 (3d Cir. 2010).

## CONCLUSION

For the foregoing reasons, Defendants' motions will be granted. An appropriate order will follow.

 */s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.